UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

        v.                              Crim. No. 2:09-CR-87

Bruce Robertson,

        Defendant.

## REPORT AND RECOMMENDATION
(Doc. 32)

Defendant Bruce Robertson, proceeding *pro se*, has moved to vacate his sentence of 188 months imprisonment pursuant to 28 U.S.C. § 2255 following his conviction for federal firearms offenses.  (Doc. 32.)  In support of his Motion, Robertson claims that he received ineffective assistance of counsel, citing his lawyer's failure to seek a downward departure for diminished capacity and to request a psychiatric evaluation in support of that departure.  (Doc. 32 at 5.)  For the following reasons, I recommend that Robertson's Motion be DENIED.

## Background

In July 2009, Robertson, a previously convicted felon, was arrested after a gun was found in a vehicle he was operating.  (Doc. 36, Tr. at 14:15-15:10; Doc. 1-1 at 1-2, ¶¶ 6-7.)  During a post-arrest interview, Robertson admitted ownership of the gun, as well as possessing ammunition found on his person at the time of his arrest.  (Doc. 36, Tr. at 14:23-15:10.)  Robertson also informed police of the location of several explosive devices, which he made by placing a combination of high-density black powder and

chemicals into a portion of a pipe with a fuse.  (*Id.* at 17:7-14.)  The police later seized and detonated these devices.

In July 2009, Robertson was charged with one count of possession of a firearm having sustained a prior felony conviction, in violation of 18 U.S.C. § 922(g)(1), and one count of production of a destructive device, in violation of the National Firearms Act, 26 U.S.C. §§ 5861(f), 5845(a), 5845(f), 5822, and 5871.  (Doc. 14 at 1-2.)  Because Robertson had previously sustained three prior convictions for crimes of violence as that term is defined in 18 U.S.C. § 924(e), he faced a 180-month mandatory minimum term of imprisonment under § 924(e).  (*See* Doc. 21 at 1, ¶ 2; Presentence Report ("PSR") at 8, ¶ 36; 16, ¶ 56; 23, ¶ 94.)

In December 2009, Robertson signed a plea agreement with the Government, in which he agreed to "plead guilty to Count 1 of the Indictment charging him with possession of a weapon by a convicted felon . . . and Count 2 . . . charging him with production of a destructive device."  (Doc. 21 at 1, ¶ 1.)  In the written plea agreement, Robertson acknowledged that he faced a 180-month mandatory minimum for Count 1 pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e), and a term of not more than ten years imprisonment for Count 2 pursuant to 26 U.S.C. § 5871.  (*Id.* at 1, ¶ 2.) [1] In exchange for Robertson's guilty plea, the Government agreed to recommend to the sentencing court that he be sentenced "at the low end of the [United States] Sentencing Guidelines range if the final offense level [was] 31 or above, and the final criminal

---

[1]  In fact, this was Robertson's second conviction in the District of Vermont under the Armed Career Criminal Act.  In 1991, he was sentenced to 180 months in prison for possession of a firearm on a felon.  (PSR at 14, ¶ 55.)

2

history category [was] VI," and to "recommend that [Robertson] receive credit for acceptance of responsibility." (*Id.* at 3, ¶ 6.) The agreement further provided that Robertson entered into the agreement "with full knowledge and understanding" and "with the advice and assistance of his counsel" with whom he "had full opportunity to consult." (*Id.* at 6, ¶ 15.) In January 2011, Robertson pleaded guilty to both counts after the Court questioned him pursuant to Federal Rule of Criminal Procedure 11. (*Id.* at 1, ¶ 1; *see* Doc. 36.)

The United States Probation Office prepared a Presentence Report ("PSR") in anticipation of sentencing. The PSR determined that Robertson's total offense level was 31. (PSR at 8, ¶ 38.) The calculation of this total offense level included a three-level reduction for Robertson's acceptance of responsibility. (*Id.* at 8, ¶ 37.) The PSR concluded that a criminal history category of VI was appropriate due, in part, to the applicability of the Armed Career Criminal Act and Robertson's possession of a destructive device. (*Id.* at 16, ¶ 56.) The PSR further concluded that Robertson faced an advisory sentencing guideline range of 188 to 235 months, (PSR at 23, ¶ 95), with a mandatory minimum term of 180 months.

The PSR also described Robertson's medical history at length, including his anxiety, depression, post-traumatic stress disorder, and various medications. (*See id.* at 20, ¶ 81.) The PSR noted that Robertson claimed to have stopped taking his medication at the time of the offense and that he had frequent thoughts of suicide. (*Id.* at 20, ¶ 82.)

Prior to sentencing, Robertson's attorney filed a sentencing memorandum which detailed Robertson's history of drug and alcohol abuse and mental health issues. (*See*

Doc. 27.)  Counsel argued in the sentencing memorandum for a non-guideline sentence

of 180 months.  (*Id.*)  At the sentencing hearing, the Court noted that it had read the PSR

and there were no sentencing guideline application issues.  (Doc. 37, Tr. at 3:3-6.)

Counsel for Robertson renewed her written argument for a non-guideline sentence based

on factors enumerated in 18 U.S.C. § 3553(a), including his "emotional issues."  (*Id.* at

4:13.)  Counsel argued that the pipe bombs were manufactured by Robertson "to commit

suicide."  (*Id.* at 5:18-19.)  Nevertheless, after listening to Robertson's request, the Court

noted both the seriousness of the offense and Robertson's prior criminal record (*id.* at

8:15-23), and concluded "that the guideline sentence [was] appropriate in this particular

case" (*id.* at 8:13-14), and sentenced Robertson to 188 months incarceration (*id.* at 10:17-

22).

## Discussion

### I.    Ineffective Assistance of Counsel

Robertson moves, pursuant to 28 U.S.C. § 2255(a), to vacate his sentence.  (*See*

Doc. 32-1 at 5.)  Specifically, Robertson claims that he received ineffective assistance of

counsel, citing his attorney's failure to request a downward departure for his alleged

diminished capacity at the time he committed the crimes.  (*See id.* at 3.)  Robertson also

contends that his attorney should have requested a psychiatric evaluation in support of a

downward departure, but failed to do so.  (*See id.*)  These claims lack merit.

Under 28 U.S.C. § 2255, "[a] prisoner in custody under sentence of a court

established by Act of Congress claiming the right to be released upon the ground that the

sentence was imposed in violation of the Constitution . . . may move the court which

imposed the sentence to vacate, set aside or correct the sentence." *Id.* at § 2255(a).  To establish ineffective assistance of counsel under the Sixth Amendment, a defendant "must show: (1) that his trial and appellate lawyers' performance was deficient, and (2) that he was actually prejudiced as a result." *Morales v. United States*, 635 F.3d 39, 43 (2d Cir. 2011) (citing *Strickland v. Washington*, 466 U.S. 668, 686, 692-93 (1984)); *see Gueits v. Kirkpatrick*, 612 F.3d 118, 122 (2d Cir. 2010).

### A.    Deficient Performance

To establish constitutionally-deficient performance, a defendant must show that his counsel's representation "fell below an objective standard of reasonableness." *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007) (internal quotation marks omitted).  In meeting this burden, a defendant must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" under the Sixth Amendment.  *Palacios v. Burge*, 589 F.3d 556, 561 (2d Cir. 2009) (internal quotation marks omitted).  For this reason, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . and even strategic choices made after less than complete investigation do not amount to ineffective assistance--so long as the known facts made it reasonable to believe that further investigation was unnecessary." *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005) (citations and internal quotation marks omitted); *see United States v. Bayless*, 201 F.3d 116, 130-31 (2d Cir. 2000) (holding that attorney's decision not to file a timely motion was reasonable because it may have been based on strategic considerations).

During sentencing, Robertson's attorney made a strategic choice to seek a non-

guideline sentence of 180 months, the mandatory minimum term of imprisonment, instead of arguing for a diminished capacity downward departure. (*See* Doc. 27 at 4-5.) Robertson's attorney enumerated several factors in support of this request, including Robertson's struggles with mental illness, his familial connections, the nature of his prior crimes, and his cooperation with the authorities. (*See id.*)  The fact that this strategy was ultimately unsuccessful does not necessarily render Robertson's counsel ineffective. *See United States v. Monzon*, 359 F.3d 110, 120 (2d Cir. 2004) (providing that "counsel's strategic choices are not to be judged by hindsight"); *Eze v. Senkowski*, 321 F.3d 110, 132 (2d Cir. 2003) (providing that courts should "refus[e] to use perfect hindsight to criticize unsuccessful trial strategies").  Rather, his attorney's request for a non-guideline sentence was objectively reasonable under the circumstances because it effectively included a diminished capacity argument. *See United States v. Berkovich*, 168 F.3d 64, 67 (2d Cir. 1999) (providing that "actions or omissions that might be considered sound trial strategy do not constitute ineffective assistance" (internal quotation marks omitted)).  Robertson's attorney's performance, therefore, was not deficient.

**B.    Actual Prejudice**

To establish actual prejudice under the second prong of the *Strickland* test, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Lynn v. Bliden*, 443 F.3d 238, 247 (2d Cir. 2006) (quoting *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001)).  Thus, in assessing Robertson's claim of ineffective assistance of counsel, the court must consider whether it is reasonably probable that he would have

received a downward departure for diminished capacity if his counsel had raised the issue before the sentencing judge and requested a psychiatric evaluation for that purpose.

It is well settled that a defendant bears the burden of proving all elements of a downward departure by a preponderance of the evidence. *United States v. Valdez*, 426 F.3d 178, 184 (2d Cir. 2005). Under the Sentencing Guidelines, a court may grant a downward departure for diminished capacity if "the defendant committed the offense while suffering from a significantly reduced mental capacity" and "the significantly reduced mental capacity contributed substantially to the commission of the offense." U.S. Sentencing Guidelines Manual § 5K2.13. The applicable comments define "significantly reduced mental capacity" as "significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." *Id.* at cmt. n.1. A downward departure for diminished capacity, therefore, does not require a defendant to prove that he cannot "recognize[] the difference between right and wrong, which may negate intent, but rather that his diminished mental capacity significantly *impaired* his judgment or his ability to understand the wrongfulness of his actions." *Valdez*, 426 F.3d at 184. For this reason, the lack of criminal intent is not synonymous with significantly reduced mental capacity in this context. *See id.* ("The inclusion of *convicted* defendants in the commentary to § 5K2.13 makes evident that a downward departure for diminished mental capacity does not necessarily require that the defendant lacked criminal intent.")

Robertson contends that his prior mental history, including his suicidal thoughts

and failure to take prescribed medication to prevent them, supported a finding of diminished capacity.  (Doc. 32-1 at 2.)  The record, however, is vacant of any evidence establishing the necessary causal link between Robertson's mental state and his criminal activity.  *See United States v. Silleg*, 311 F.3d 557, 564 (2d Cir. 2002) (providing that courts have required "a causal link between that reduced capacity and the commission of the charged offense" (internal quotation marks omitted)).  Thus, Robertson failed to prove his eligibility for a diminished capacity downward departure by a preponderance of the evidence.

Even assuming, arguendo, that a psychiatric evaluation could establish such a nexus, there is no reasonable probability that this evidence would have altered the decision of the sentencing judge.  *See Lynn*, 443 F.3d at 247 (providing that counsel's ineffectiveness must be a "but for" cause).  Although Robertson's counsel did not explicitly request a downward departure for his diminished capacity, she did seek a non-guideline sentence lower than 188 months imprisonment based, at least in part, on the fact that "all of his criminal history can be linked directly or indirectly to mental health issues exacerbated by drug and alcohol use."  (Doc. 27 at 4; *see* Doc. 37, Tr. at 3:16-18.)  Furthermore, the PSR drew the Court's attention to Robertson's relevant psychological problems.  *See supra* Background.  Nevertheless, despite the consideration of these facts and arguments, the Court sentenced Robertson to 188 months imprisonment.  (Doc. 37, Tr. at 3:3-6, 10:17-22.)  Under these circumstances, when a sentencing judge is fully informed of a defendant's psychological condition and considered a lower sentence, an attorney's failure to specifically request either a downward departure for diminished

capacity or a psychological examination is not ineffective assistance of counsel.  *See, e.g.*, *Aloysius v. United States*, No. 09-3494, 2009 U.S. Dist. LEXIS 122979, at *5 (S.D.N.Y. Dec. 30, 2009) (holding that failure to raise history of sexual abuse and request psychological examination was not a basis for ineffective assistance of counsel because attorneys sought downward departure based on abuse and court considered it during sentencing).

Robertson, therefore, has failed to show that his attorney's performance was deficient and that he was prejudiced by his attorney's failure to request a downward departure for diminished capacity and seek a psychiatric evaluation.  Accordingly, I recommend that Robertson's Motion challenging his sentence on this ground be denied.

## II.    Waiver of Constitutional Rights

Although Robertson does not expressly contend that his guilty plea was invalid, there is language in his response brief that arguably raises this challenge.  Specifically, Robertson states that "[w]hen I pled guilty [I] did it without realizing it, I had to be prompted by my attorney."  (Doc. 39 at 3.)  It is well settled in the Second Circuit that a party may not raise an argument for the first time in a reply brief.  *Concepcion v. United States*, 181 F. Supp. 2d 206, 231 (E.D.N.Y. 2002).  Regardless, this claim also lacks substantive merit.

"A criminal defendant waives three constitutional rights when he pleads guilty: the privilege against self-incrimination, the right to a jury trial, and the right to confront one's accusers."  *Godinez v. Moran*, 509 U.S. 389, 397 n.7 (1993).  For this reason, a guilty plea will be valid under the Constitution only so long as the defendant was competent,

and he knowingly and voluntarily waived these rights.  *United States v. Nichols*, 56 F.3d

403, 413 (2d Cir. 1995).

### A.    Competency

For a defendant to be competent to waive his constitutional rights, he "must have

(1) sufficient present ability to consult with his lawyer with a reasonable degree of

rational understanding and (2) a rational as well as factual understanding of the

proceedings against him."  *United States v. Morrison*, 153 F.3d 34, 46 (2d Cir. 1998)

(internal quotation marks omitted); see *Nichols*, 56 F.3d at 413 (providing that "[t]he

same standard of competency applies to the capacity to stand trial and the waiver of

constitutional rights").  "The district court is to determine competency based on the

preponderance of the evidence."  *Morrison*, 153 F.3d at 46.

During his change of plea hearing, Robertson told the Court that he had been

provided the opportunity to consult with his attorney, that they had discussed the plea

agreement, and that he understood its terms and conditions.  (Doc. 36, Tr. at 5:25-6:12,

7:11-4.)  Robertson also informed the Court that his prescription medication, Zoloft, did

not affect his ability to understand the proceedings and that he was aware that he was

waiving his constitutional rights to a jury trial, to confront his accusers, and against self-

incrimination.  (*Id.* at 4:23-5:20, 9:7-10,11:4-6, 12:1-4, 12:13-17, 12:23-13:4.)  The

Court, after considering Robertson's responses and observing the defendant during the

hearing, determined that he was "fully competent and capable of entering an informed

plea, that [he was] aware of the nature of the charges and the consequences of the plea,

and that the plea of guilty [was] a knowing and voluntary plea supported by an

independent basis in fact . . . ."  (*Id.* at 18:5-9.)  There is no evidence refuting this

conclusion.[2]  *See Morrison*, 153 F.3d at 46 (providing that, when "determining

competency, the court may consider medical opinion as well as its own observation of the

defendant's conduct"); *Nichols*, 56 F.3d at 412 (providing that "some degree of mental

illness cannot be equated with incompetence to stand trial" (internal quotation marks

omitted)); *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995) (providing that "[a]

failure by trial counsel to indicate that the defendant had any difficulty in assisting in

preparation or in comprehending the nature of the proceedings provides substantial

evidence of the defendant's competence" (internal quotation marks omitted)).

Robertson, therefore, was competent at the time of his change of plea hearing.[3]

### B.    Knowing and Voluntary Waiver

Additionally, a defendant's waiver of his constitutional rights must be knowing

and voluntary.  *See Nichols*, 56 F.3d at 416.  "Courts have stressed that a waiver is only

knowing or informed if the defendant fully understood the consequences of the waiver."

---

[2] In his response brief, Robertson contends that "[i]t is clear from defendant's statement at the plea hearing [that] he had little [u]nderstanding of what was going on" and that "during the plea hearing defendant told [his] lawyer[,] the United States Attorney[,] and the judge that he had not slept since his arrest."  (Doc. 39 at 2-3.)  Robertson also recalled that he "stated [that he] should probably wait to plead because [he] had been seeing things" and apologized to the Court because he could not think straight as he had not slept in twenty-one days.  (*Id.*)  Upon review of the transcript of the plea colloquy, however, it is clear that none of these statements were in fact made.  Rather, Robertson answered affirmatively that he understood the elements of the crimes for which he had been charged and the consequences of his guilty plea.  (*See generally* Doc. 36, Tr. at 4-18.)

[3] To the extent that Robertson's motion can be interpreted as purporting ineffective assistance of counsel for his attorney's failure to request a psychiatric evaluation for the purposes of competency, this claim also lacks merit.  As previously discussed, such a claim would require Robertson to establish actual prejudice.  *See supra* Part I.  For the aforementioned reasons, however, Robertson cannot make such a showing.

*United States v. Ready*, 82 F.3d 551, 557 (2d Cir. 1996) (internal quotation marks omitted).  A defendant's waiver is voluntary so long as he is "[c]ompetent at the time" and the choice is "of his own volition."  *Nichols*, 56 F.3d at 416.

At the hearing on Robertson's change of plea, the Court informed him of the result of pleading guilty, including, *inter alia*, the maximum penalty for each of the crimes, that the terms of the plea agreement were mere recommendations, that he would have a felony conviction, and that he could lose certain civil rights.  (Doc. 36, Tr. at 7:5-9:6.) Robertson stated that he understood all of these potential consequences.  (*Id.* at 9:7-10.) Finally, Robertson told the Court that his plea was of his own volition and he does not challenge this fact now.  (*See id.* at 6:16-22.)  This evidence, therefore, supports a finding that Robertson's guilty plea was both knowing and voluntary.

For the aforementioned reasons, Robertson's guilty plea, which effectively waived his constitutional rights, is valid.  Accordingly, I recommend that his Motion challenging his sentence on this ground be denied.[4]

---

[4] The Government additionally briefed the issue of an insanity defense under 18 U.S.C. § 17 and Federal Rule of Criminal Procedure 12.2(c)(1)(B).  (*See* Doc. 38 at 8-10.)  Nevertheless, Robertson unequivocally states that he had no intention of raising such a defense.  (Doc. 39 at 1.)  The Court, therefore, need not address this argument.

### Conclusion

Based on the foregoing, I recommend that Robertson's Motion to vacate, set aside, or correct his sentence (Doc. 32) be DENIED.

Dated at Burlington, in the District of Vermont, this 4th day of October, 2011.


/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge


Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation.  *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).